Jeffrey R. Sylvester, Esq.
Allyson R. Noto, Esq.
Sylvester & Polednak, Ltd.
7371 Prairie Falcon Road, Suite 120
Las Vegas, NV 89128
Tel.: 702.952.5200
Fax: 702.952.5205
jeff@sylvesterpolednak.com
allyson@sylvesterpolednak.com

James E. Hough, Esq.
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050
Tel.: 212.468.8000
Fax: 212.468.7900
jhough@mofo.com
*Pro Hac Vice Pending*

Attorneys for **JPMORGAN CHASE BANK, N.A.**

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., | Case No.: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| | **JURY DEMAND** |
| KB HOME and KB HOME NEVADA, INC., | |
| Defendants. | |

JPMorgan Chase Bank, N.A. ("JPMorgan" or "Plaintiff"), for itself and as Administrative Agent, by its undersigned counsel, Sylvester & Polednak, Ltd., for its complaint against defendants KB Home ("Defendant Parent") and KB Home Nevada, Inc. ("Defendant Member" and, generally with Defendant Parent, each a "Defendant"), alleges, on knowledge with respect to its own acts, and on information and belief with respect to all other matters as follows:

///

## JURISDICTION AND VENUE

1. The Plaintiff is a corporation incorporated under the laws of Ohio with its principal place of business in Ohio. Defendant Parent is a corporation incorporated under the laws of Delaware with its principal place of business in California. Defendant Member is corporation incorporated under the laws of Nevada with its principal place of business in Nevada. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

3. Defendants have consented to personal jurisdiction in this Court.

## PARTIES AND RELEVANT NON-PARTIES

4. Plaintiff is a nationally chartered bank with its main office in Columbus, Ohio. Pursuant to 28 U.S.C. § 1348, Plaintiff is a citizen of the State of Ohio. Plaintiff brings this action on its own behalf, and as Administrative Agent under the Credit Agreement and other Loan Documents defined below.

5. Defendant Parent is a Delaware corporation with a principal place of business at 10990 Wilshire Boulevard, Los Angeles, California, and is a citizen of the states of Delaware and California.

6. Defendant Member is a Nevada corporation with its principal place of business located at 5655 Badura Ave., Las Vegas, Nevada, and is a citizen of the state of Nevada. Defendant Member is a controlling Member of the "Borrower," South Edge, LLC ("South Edge").

7. Non-party South Edge is a Nevada limited liability company with its principal place of business at 3455 Cliff Shadows Parkway, Suite 220, Las Vegas, Nevada.

8. Non-Party South Edge is comprised of the eight members (each a "Member"), of which Defendant Member is one. The other Members of South Edge are Focus South Group, LLC, Coleman-Toll Limited Partnership, Meritage Homes Nevada, Inc., Beazer Homes Holding Corp., Pardee Homes of Nevada, Alameda Investments, LLC, and Kimball Hill Homes Nevada, Inc.

9. Each Member has a parent (each a "Parent"), and Defendant Parent is the Parent of Defendant Member. The Parents of the Members listed in paragraph 12 are John A. Ritter, Toll

///

Brothers, Inc., Meritage Homes Corp., Beazer Homes USA, Inc., Weyerhaeuser Real Estate Company, Woodside Group, Inc., and Kimball Hill Inc., respectively.

### SUMMARY OF THE ACTION

10. This is a diversity action arising from multiple breaches of several contracts that relate to a real estate development project called "Inspirada" (the "Project") located in Henderson, Nevada that encompasses nearly two thousand acres of land purchased at auction from the federal government. Development of Inspirada was initially projected to cost more than $1.25 billion, and is now projected to cost at least $1.55 billion. A significant portion of the financing for Inspirada was provided by a syndicate of banks, for which Plaintiff acts as Administrative Agent, in the form of loans to South Edge, an entity that was formed solely for the purpose of developing the Project.

11. South Edge is controlled by its eight Members, each of which is affiliated with a large real estate developer. Defendant Member is one of the Members, and is a wholly owned subsidiary of Defendant Parent. Separate, parallel actions or claims have been filed against the other Members and their Parents.[1]

12. As a result of the breaches of the Credit Agreement (defined below) and other Loan Documents alleged herein, Plaintiff is entitled to enforce rights to the collateral pledged as security for the loans to South Edge. Among the collateral pledged by South Edge is the right to enforce certain contracts that require the Members to make payments to South Edge, so that South Edge will have funds to repay the lenders. By this action, Plaintiff seeks to enforce those rights against Defendant Member. The full amount owed by Defendant Member will be determined at the trial of this action.

13. This action also seeks to hold Defendant Parent responsible for causing Defendant Member to breach its payment obligations to South Edge, for its wrongful interference with the

---

[1] Six similar suits have been filed by Plaintiff against 1) Pardee Homes of Nevada and Weyerhaeuser Real Estate Company, 2) Beazer Homes Holding Corp. and Beazer Homes USA, Inc., 3) Coleman-Toll Limited Partnership and Toll Brothers, Inc., 4) KB Home Nevada, Inc. and KB Home, 5) Meritage Homes Nevada, Inc. and Meritage Homes Corp., and 6) Alameda Investments, LLC. Woodside Group, Inc. (the Parent of Alameda Investments, LLC, a South Edge Member), Kimball Hill Homes Nevada, Inc., and Kimball Hill Inc. (the Parents of Kimball Hill Homes Nevada, Inc., a South Edge Member) have filed as debtors under Chapter 11 of the United States Bankruptcy Code and have, therefore, not been named as defendants in any of these related suits.

contracts between Defendant Member and South Edge, and for its failure to honor its contractual obligations to South Edge and to the lenders.

## BACKGROUND ALLEGATIONS

14. In 2003, preliminary discussions began for the creation of "Inspirada" - a large-scale "new urbanism" development project in the City of Henderson, Nevada. Inspirada was to include 11,500 residences spread over nearly 2,000 acres of land, and was expected to cost approximately $1.25 billion. The Development Costs (as defined in the Credit Agreement) have increased by at least another $325,000,000 as a result of delays and other problems caused by Defendants, among other causes.

15. The Members formed South Edge in May 2004 to purchase the land for the Project from the Federal Bureau of Land Management at a cost of $557 million. South Edge completed that purchase, in part, with funds loaned by Lenders pursuant to a Credit Agreement dated November 1, 2004, among South Edge, as "Borrower," JPMorgan, as "Administrative Agent" and as a "Lender," together with the other "Lenders" from time to time party thereto (the "Lenders"), which was replaced by an Amended and Restated Credit Agreement, dated March 9, 2007 (the "Credit Agreement"). A copy of the Credit Agreement is attached hereto as **Exhibit "A"** and is incorporated herein by reference.[2] Except as otherwise specified herein, the capitalized terms in this Complaint are used as they are defined in the Credit Agreement.

16. Defendant Member (as well as the other Members) agreed to purchase specified parcels of land from South Edge. The payments from the Members to South Edge in connection with land purchases were intended to provide funds South Edge would use, as Borrower, to repay its liabilities and obligations to Lenders under the Credit Agreement and other Loan Documents.

17. Each Member has the right and the obligation to acquire specified parcels of land, from South Edge in successive Phases. Each parcel of the land so purchased must be developed in accordance with the Project's Master Plan.

///

---

[2] Certain non-substantive portions (such as exhibits and non-party signature pages) have been omitted from **Exhibit "A"** due to the substantial volume of the document.

-4-

18. Defendant Member also agreed to make periodic payments to Borrower in amounts and under conditions specified in the agreements identified below. Borrower's rights to enforce such payment and related obligations are among the collateral pledged to Lenders under the Loan Documents.

19. Defendant Member has, among other things, failed and refused to purchase land from Borrower in accordance with its agreements, and make other payments and perform other obligations to Borrower as required by its agreements.

20. Borrower is dependent on Defendants (together with the other similarly situated Members and Parents) to be able timely to perform its obligations to Lenders. Borrower requires, and was promised, timely cooperation, funding and support from Defendants, as well as other Members and Parents.

21. Defendants were and are unconditionally obligated to timely perform and to pay all of their relevant liabilities and obligations.

22. Defendants have undermined Borrower's ability to repay Lenders through their actions and failures to act.

23. On May 3, 2004 the Members, including Defendant Member, entered into the Amended and Restated Operating Agreement of South Edge, LLC, dated as of May 3, 2004 (as amended, the "LLC Agreement"), attached hereto as **Exhibit "B,"** and incorporated herein by reference.

24. On October 24th, 2004, the Members, including Defendant Member, entered into an "Acquisition Agreement" with Borrower (Acquisition Agreement is defined in the Credit Agreement as the "Purchase and Sale Agreement and Joint Escrow Instructions"), attached hereto as **Exhibit "C"** and incorporated herein by reference.

## THE COLLATERAL DOCUMENTS

25. Pursuant to the Credit Agreement and to provide security for the repayment of the loans made thereunder, Borrower executed, in favor of Plaintiff (on behalf of Lenders), the following "Collateral Documents," in which Plaintiff and Lenders acquired as "Collateral" both a Lien on the

///

Project and related real property rights and interests as "Trust Property," as well as certain personal property security interests pursuant to the applicable Uniform Commercial Code ("UCC"):

    (a)    The Deed of Trust, Security Agreement, Fixture Filing and Assignment of Rents and Leases dated as of October 29, 2004, and recorded as Instrument No. 20041101-0006330 with the Clark County Recorder on November 1, 2004, as amended by the First Amendment to Deed of Trust, Security Agreement and Fixture Filing and Assignment of Rents and Leases dated as of March 9, 2007, and recorded with the Clark County Recorder on March 9, 2007, (the "Deed of Trust"), a copy of which is attached hereto as *Exhibit "D"* and incorporated herein by reference;

    (b)    The Assignment of Contracts, Permits and Plans and Specifications dated as of November 1, 2004 (the "Assignment of Contracts"), a copy of which is attached as *Exhibit "E"* and incorporated herein by reference;

    (c)    The Assignment of and Agreement with Respect to Acquisition Agreements dated as of November 1, 2004 (the "Assignment of Acquisition Agreements"), a copy of which is attached hereto as *Exhibit "F"* and incorporated herein by reference; and

    (d)    A UCC financing statement duly filed in the Nevada Secretary of State's office to perfect such UCC security interest.

26.    Among such UCC Collateral (as described below) constituting personal property subject to the UCC are liabilities and obligations of each Defendant to Borrower in connection with each of their contracts (herein collectively referred to as the "Defendants' Contract Collateral"), including without limitation:

    (a)    the Acquisition Agreement, as amended;

    (b)    the LLC Agreement;

    (c)    to the extent that they constitute personal property subject to the UCC, all other contract rights, accounts, general intangibles, actions and rights in actions relating to the "Real Property" or "Personal Property" referenced in the Deed of Trust or the Project, as well as all contracts relating to the development, design or construction of the Improvements, together with all proceeds thereof or proceeds of the

Acquisition Agreement or of the sale of all or any part of that Real Property or other Trust Property (described in the Deed of Trust as "Sale Proceeds") and including the sale of interests in the Project; and

(d) all other revenues, profits, proceeds, principal, interest, fees, or other sums or amounts constituting personal property under the UCC and derived or generated from the ownership, operation, occupancy, leasing, licensing, development, sale or other disposition of the Project or other Collateral by Borrower or due or payable to Borrower under the Acquisition Agreement, as well as all other similar contracts of any other nature concerning the design, construction, or development of any portion of or all of the Project, and all personal property proceeds thereof subject to the UCC.

## PLAINTIFF'S AUTHORITY TO ENFORCE BORROWER'S RIGHTS

27. Plaintiff is entitled under the Credit Agreement, Collateral Documents and applicable law (including UCC 9607) to enforce each and every right, remedy and claim of Borrower against Defendants in connection with Defendants' Contract Collateral, including, without limitation, each of the rights, remedies and claims asserted in this Complaint, including injunctive relief.

28. Plaintiff is entitled to act in the name and place of Borrower in order to enforce Borrower's rights against Defendants and to perform Borrower's obligations to Lenders, including pursuant to § 9.03 of the Credit Agreement, which provides, in pertinent part; "the Borrower hereby appoints and constitutes the Administrative Agent its lawful attorney in fact with full power of substitution and agrees that the Administrative Agent and the Lenders shall be entitled, subject to applicable Requirements of Law, to . . . (K) do any and every act which the Borrower might do in its own behalf, it being understood and agreed that the foregoing power of attorney shall be a power coupled with an interest and cannot be revoked."

29. Pursuant to the Deed of Trust, Plaintiff is entitled by its terms and applicable law to, among other things, execute and enforce this Complaint, including, without limitation, by:

(a) Collecting as "Sale Proceeds" of such "Sale Contracts" the relevant amounts owing to Borrower collected by Plaintiff hereunder from each Defendant, as UCC Collateral. Borrower (as Trustor) has authorized Plaintiff on account of the

continuing Events of Default to recover all such amounts from Defendants, either as attorney in fact for Borrower or as a secured creditor, in either case "with full power to bring suit for collection thereof," as provided in the Deed of Trust;

(b) Pursuant to § 7, performing any of Borrower's obligations, exercising any of Borrower's rights and remedies; and

(c) Exercising other rights thereunder or under the Credit Agreement incorporated by § 10 of the Deed of Trust, which authorizes the remedies enforced herein.

30. Pursuant to the Assignment of Acquisition Agreements, Plaintiff is also now entitled by its terms and applicable law to, among other things, execute and enforce this Complaint, including, without limitation, by:

(a) Collecting all "Proceeds" as defined therein in accordance with §§ 3 and 7 of the Assignment of Acquisition Agreements, including all amounts claimed hereunder as UCC Collateral; and

(b) Enforcing Plaintiff's rights under § 3(a)(i) of the Assignment of Acquisition Agreements "to enforce, for its own benefit, the rights and benefits of the Borrower in the Acquisition Agreements"; under § 3(a)(ii) of the Assignment of Acquisition Agreements "to institute, appear in and defend any action or proceeding purporting to affect, enforce, adjudicate or determine the rights, powers, duties or obligations of the Borrower under the Acquisition Agreements"; and under § 3(a)(iv) of the Assignment of Acquisition Agreements "to incur and pay reasonable costs and expenses, employ counsel, and incur and pay reasonable attorney's fees" as "additional Secured Obligations. . . ."

31. Defendants have subordinated their respective rights, claims and interests as to Borrower in favor of Plaintiff's and other Lenders' rights, claims and interests pursuant to § 4 of the Assignment of Acquisition Agreements.

## DEFAULTS AND BREACHES

///

///

32. Events of Default exist under the Credit Agreement and Collateral Documents and other Loan Documents. Defaults also continue to exist on Defendants' Collateral obligations to Borrower under Defendants' Contract Collateral.

33. Borrower is currently in default under the Credit Agreement, Collateral Documents, and other Loan Documents, for, among other reasons, its failure to timely pay millions of dollars in interest and fees, and to make principal payments as and when due.

34. Borrower is also in default for, among other reasons, its failure to diligently continue and complete the construction of the Improvements on the Project without material interruption or cessation in the manner required in the Credit Agreement, and for failing to pay Development Costs and make Balancing Payments as required under the Credit Agreement, the Other Loan Documents, and the Balancing Notice.

35. Defendant Member has failed and refused to purchase parcels of land as required under the Acquisition Agreement and LLC Agreement.

36. Defendant Parent has interfered with Borrower's and Plaintiff's rights with respect to the Acquisition Agreement and the LLC Agreement, and has deprived Borrower and Plaintiff of the benefits thereof, by failing and refusing to permit and enable Defendant Member to honor its obligations to complete land purchases as set forth therein.

37. Members and Parents, including Defendants, have intentionally and wrongfully failed to provide funds and other support owed to Borrower and necessary for Borrower to perform its obligations to Lenders.

38. Each of these defaults and Events of Default is continuing, notwithstanding notice of such defaults having been provided to Borrower and Defendants. Plaintiff also has made a demand for assurances of future performance on Borrower and Defendants.

### ANTICIPATORY REPUDIATION BY FAILURE TO REASSURE

39. Plaintiff has requested Borrower and Defendants' assurance of future performance of its obligations, and cure of Events of Default and other defaults under the Loan Documents including, without limitation, by the notices attached as **Exhibit "G."** Each Defendant (as well as

///

1  Borrower) has failed to cure any defaults or to provide any assurances, and Plaintiff is informed and
2  believes that Defendants are unable and unwilling to do so.
3      40.    Plaintiff has requested assurances of performance and of cure of the defaults and
4  Events of Default under Defendants' Contract Collateral, including, without limitation, by Plaintiff's
5  notices of default and demands for adequate assurances of future performance on behalf of Borrower
6  and itself, a copies of which is attached hereto as **Exhibit "H."** Defendants have failed to cure such
7  defaults under Defendants' Contract Collateral or to provide adequate assurances of future
8  performance thereunder, thereby anticipatorily repudiating and breaching all of those obligations.

## ATTORNEYS' FEES

41.  Plaintiff is entitled to recover attorneys' fees and all other fees, costs and expenses for enforcing Borrower's rights and claims against Defendant Member under Defendants' Contract Collateral and against Defendant Parent, including, without limitation, pursuant to § 25.f of the Acquisition Agreement, § 17 of the Assignment of Acquisition Agreements, and § 15.13 of the LLC Agreement.

## COUNT I - BREACH OF CONTRACT - DAMAGES
## KB HOMES NEVADA, INC.

42.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 41 above as if fully set forth herein.

43.  By reason of the foregoing, Defendant Member has breached its contractual obligations to Borrower and to Plaintiff.

44.  By reason of the foregoing, Defendant Member has injured Plaintiff and is liable to Plaintiff for damages to be proven in this action.

## COUNT II - BREACH OF CONTRACT - DAMAGES
## KB HOMES

45.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 46 above as if fully set forth herein.

46.  Defendant Parent's obligations include the implied covenant of good faith and fair dealing.

47. By comprehensive and continuous use of its management control and vetoes over Borrower's performance and enforcement of its obligations for the self-interested benefit of Defendants, Defendant Parent has breached its fiduciary duties, as well as its contractual and other legal duties, to Lenders under the Loan Documents, as well as to Borrower under Defendants' Contract Collateral.

48. By reason of the foregoing, Defendant Parent has breached its contractual obligations to Borrower and to Plaintiff, including the implied covenant of good faith and fair dealing.

49. By reason of the foregoing, Defendant Parent has injured Plaintiff and is liable to Plaintiff for damages to be proven in this action.

### COUNT III - BREACH OF FIDUCIARY DUTY
### KB HOMES AND KB HOMES NEVADA, INC.

50. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 49 above as if fully set forth herein.

51. Defendants, as members and/or managers or controlling persons of Borrower, owe fiduciary duties of loyalty to Borrower under applicable law.

52. Because Borrower is insolvent, and therefore has fiduciary duties to creditors, Defendants, as controllers and managers of the insolvent Borrower, also owe fiduciary duties to such creditors, including in this case, Plaintiff and other Lenders.

53. By comprehensive and continuous use of their management control and vetoes over Borrower's performance and enforcement of Borrower's obligations for the self-interested benefit of Defendants, Defendants have breached their respective fiduciary duties, as well as their contractual and other legal duties to Lenders under the Loan Documents as well as to Borrower under Defendants' Contract Collateral.

54. By acting in a manner disloyal to Borrower, Defendants have breached their fiduciary duties.

55. By reason of the foregoing, Defendants have injured Plaintiff and are liable to Plaintiff for damages to be proven in this action.

///

-11-

## COUNT IV - INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS
## KB HOMES

56. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 55 above as if fully set forth herein.

57. Defendant Parent has knowingly and intentionally interfered with the contracts between Defendant Member and Borrower.

58. Defendant Parent's knowing and intentional interference with the contracts between Defendant Member and Borrower was intended to disrupt the contractual relationship between Defendant Member and Borrower and has resulted in a disruption of that relationship.

59. By reason of the foregoing, Defendant Parent has injured Plaintiff and is liable to Plaintiff for damages to be proven in this action.

## COUNT V - CONSTRUCTIVE AND/OR RESULTING TRUST
## KB HOMES AND KB HOMES NEVADA, INC.

60. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 59 above as if fully set forth herein.

61. Defendants have failed to pay all "credit, rebate, reimbursement or reductions in amounts otherwise payable by [Defendant Member]" as "Reimbursable Fees" as required by Acquisition Agreement § 11.f. Plaintiff also demands performance by Defendants of their covenants in Acquisition Agreement § 11.g and that Defendants "cooperate with [Borrower] and complete any applications and an assignment of rights to receive credits required in order for Developer to obtain reimbursement of such amounts" as required by Acquisition Agreement § 11.f.

62. By reason of the foregoing, Defendants have breached their contractual obligations set forth in the Acquisition Agreement and Plaintiff requests that the court impose a constructive and/or resulting trust on Defendants for such fees.

///
///
///
///

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that the following relief be awarded:

(a) Entry of judgment against Defendants, in amounts to be proven in this action, calculated by Plaintiff to be no less than $164,723,251 (Defendants' pro-rata share of the outstanding amounts owed to Plaintiff), together with applicable pre- and post-judgment interest;

(b) Entry of an order imposing a constructive and/or resulting trust on Defendants;

(c) Entry of an order awarding Plaintiff its attorneys' fees and other costs of collection associated with enforcing Plaintiff's rights and claims under the Loan Documents and Defendants' Contract Collateral and under applicable law; and

(d) Such other and further relief as this Court deems just and proper.

DATED this 5th day of December, 2008.

Respectfully submitted,

SYLVESTER & POLEDNAK, LTD.

By: _____
Jeffrey R. Sylvester, Esq.
Allyson R. Noto, Esq.
7371 Prairie Falcon Road, Suite 120
Las Vegas, Nevada 89128
Tel.: 702-952-5200
Fax: 702-952-5205
jeff@sylvesterpolednak.com
*Attorneys for Plaintiff JPMorgan Chase Bank, N.A.*

James E. Hough, Esq.
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050
Tel.: 212.468.8000
Fax: 212.468.7900
jhough@mofo.com
*Pro Hac Vice Pending*